IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| MARGARET W., individually and on behalf of J.W., and J.W., | **COMPLAINT** |
| Plaintiffs, | Case No. 25-1433 |
| v. | |
| ASCENSION WISCONSIN, a Wisconsin corporation, AUTOMATED BENEFIT SERVICES, INC., a Michigan corporation, and the ASCENSION SMARTHEALTH MEDICAL PLAN, | |
| Defendants. | |

Plaintiffs Margaret W., individually and on behalf of J.W., and J.W., by and through their counsel, hereby complain against Defendants, alleging in the totality and alternatively as follows:

### INTRODUCTION

J.W. received nearly three months of mental health treatment at Elements Wilderness Program ("Elements"). That treatment was a covered mental health service under the Plaintiffs' employer-sponsored health care plan sponsored and administered by Defendants. Defendants did not provide benefits for Plaintiffs' claims. As a result, Plaintiffs incurred substantial expenses. Defendants' primary rationale for denying benefits was that Elements did not meet the plan's requirements to be covered. None of Defendants' asserted reasons for denying coverage were valid. Further, Defendants' administration of the plan with respect to mental health benefits was in violation of federal statutory requirements that such benefits must be provided in parity with medical and surgical benefits.

## PARTIES, JURISDICTION, AND VENUE

1.      Margaret W. and J.W. are, and were at all times relevant hereto, residents of Milwaukee County, Wisconsin. Margaret W. is J.W.'s mother.

2.      Defendant Ascension Wisconsin ("Ascension") is a Wisconsin corporation.

3.      Ascension was, at all times relevant hereto, Margaret W.'s employer.

4.      Ascension SmartHealth Medical Plan ("the Plan") is the name of the health plan sponsored by Ascension.[1]

5.      Defendant Automated Benefit Services, Inc. ("ABS"), a Michigan corporation, is a third-party administrator contracted by Ascension to provide certain administrative and claims processing services for the Plan.

6.      At all times relevant hereto, Margaret W. was a participant in the Plan through her employment with Ascension. J.W. was and is Margaret W.'s dependent and at all times relevant hereto was a beneficiary under the Plan.

7.      The Plan was a welfare benefits plan under 29 U.S.C. § 1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

8.      ABS was, at all times relevant hereto, the Claims Administrator and a fiduciary for the Plan.

9.      This lawsuit arises from mental health treatment that J.W. received at Elements in Huntington, Utah.

---

[1] "Participating Employers     The Plan has been adopted by Ascension Wisconsin." Summary Plan Description at i.

10. This lawsuit is brought to obtain an order requiring Defendants to pay or reimburse expenses incurred during J.W.'s treatment at Elements. The remedies Plaintiffs seek under ERISA and the Plan are for benefits due under the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B); for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendants' violations of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"); an award of pre-judgment interest; and an award of fees and costs pursuant to 29 U.S.C. § 1132(g).

11. This Court has jurisdiction under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

12. Venue is appropriate pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's provisions regarding nationwide service of process and venue and the location of the Plan sponsor and of the Plaintiffs.

## FACTUAL ALLEGATIONS[2]

### J.W.'s Treatment

13. J.W. received mental health and substance abuse treatment at Elements from October 12, 2022, through January 3, 2023.

14. Elements was located in Huntington, Utah. It was licensed by the State of Utah as an outdoor youth treatment facility and was accredited by the Association for Experiential Education. Elements was a 24/7 outdoor behavioral health treatment facility that provided outdoor behavioral health services to children and adolescents.

15. J.W. was referred to Elements because of suspensions from school, deficits in executive functioning, drug abuse, low motivation, little accountability, poor peer choices, anger,

---

[2] Unless otherwise noted, the information supporting these allegations is contained within the Administrative Record. The Administrative Record is incorporated herein by reference

3

defiant behaviors, impulsiveness, opposition to authority, verbal aggression, family conflict, and symptoms of anxiety, sadness, and depression. Specific concerns and problematic behaviors included escalating anger and acting out at home, recent legal trouble, and escalating difficulty despite additional support and structure at home.

16. J.W. was diagnosed with various mental health disorders, including major depressive disorder; cannabis use disorder; nicotine use disorder; attention deficit hyperactivity disorder; and dyslexia, under the criteria established in the Diagnostic and Statistical Manual of Mental Disorders, fifth edition.

17. J.W. received treatment for each of these disorders at Elements, and experienced improvements in these conditions as a result of the treatment received at Elements.

**Plan Coverage**

18. Defendants issued a document, the "Ascension SmarthHealth Medical Plan Summary Plan Description" ("SPD"), intended to "serve as a summary of the… 'Plan'…effective January 1, 2022". SPD at 17.

19. The SPD states that there is also an "official Plan document" whose terms prevail if there are any discrepancies between that document and the SPD. *Id.*

20. Defendants have not provided any "official Plan document" to Plaintiffs.

21. The SPD contained a section entitled "**Covered Expenses and Exclusions**" that stated that "All of the services and supplies covered by the Plan – Covered Expenses – are listed in this section."

22. Under the subheading "**Mental Health,**" the SPD lists the following covered services:

4

The Plan covers Psychiatric Treatment including Inpatient, Partial Day Treatment, Intensive Outpatient, and Individual or Group Therapy, as follows:

● Acute Hospital and Accredited Care Facility admissions.
● Partial Hospital Confinement provided by Hospitals or Accredited Care Facilities. All eligible charges in conjunction with this care will be considered as charges of a Hospital Confinement.
● Electroshock therapy when administered by a Physician.
● Anesthesia for electroshock therapy when administered by a Physician other than the Physician administering the electroshock therapy or by a CRNA.
● Acute Inpatient care for Substance Use Disorder.
● Detoxification, including voluntary sub-acute detoxification provided by an acute Hospital or Accredited Care Facility.
● Intensive Outpatient Therapy provided by a Hospital or Accredited Care Facility.
● Intensive Outpatient Therapy with domicile provided by an approved facility.
● Individual, Family or Group counseling or therapy provided by a licensed psychiatrist (MD or DO), licensed psychologist (LP – Doctorate Psychologist), limited licensed psychologist (LLP – Masters Psychologist), licensed professional counselor (LPC – Masters Counselor), licensed master social worker (LMSW – Masters Social Worker), licensed nurse with a specialty in psychiatry (Masters of Science in Nursing with RN license) or Nurse Practitioner (NP with RN license).
● Psychiatric evaluation, treatment, and medication reviews when provided by a psychiatrist.
● Psychological, neuropsychological or neurobehavioral status testing provided by a psychiatrist or person qualified in the particular area of testing.
● Transcranial Magnetic Stimulation treatment to treat major depressive disorder.

SPD at 40.

23.     Under the subheading "**Substance Use Disorder (SUD) and Psychiatric Treatment**," the SPD lists the following covered services:

5

The Plan covers Psychiatric Treatment including Inpatient, Partial Day Treatment, Intensive Outpatient, and Individual or Group Therapy, as follows:

● Acute Hospital and Accredited Care Facility admissions.
● Partial Hospital Confinement provided by Hospitals or Accredited care facilities. All eligible charges in conjunction with this care will be considered as charges of a Hospital Confinement.
● Electroshock therapy when administered by a Physician.
● Anesthesia for electroshock therapy when administered by a Physician other than the Physician administering the electroshock therapy or by a CRNA.
● Detoxification, including voluntary sub-acute detoxification, provided by an acute Hospital or Accredited Care Facility.
● Intensive Outpatient Therapy provided by a Hospital or Accredited Care Facility.
● Intensive Outpatient Therapy with domicile provided by an approved facility.
● Individual, family or group counseling or therapy provided by a licensed psychiatrist (MD or DO), licensed psychologist (LP – Doctorate Psychologist), limited licensed psychologist (LLP – Masters Psychologist), licensed professional counselor (LPC – Masters Counselor), licensed master social worker (LMSW – Masters Social Worker), licensed nurse with a specialty in psychiatry (Masters of Science in Nursing with RN license) or Nurse Practitioner (NP with RN license).
● Psychiatric evaluation, treatment, and medication reviews when provided by a psychiatrist.
● Psychological, neuropsychological or neurobehavioral status testing provided by a psychiatrist or person qualified in the particular area of testing.
● Acute Inpatient care for Substance Use Disorder.
● Transcranial magnetic stimulation treatment to treat major depressive disorder.
● Residential treatment care in a Residential Treatment Center only when the Participant's condition
(i) makes treatment beyond Outpatient services Medically Necessary and
(ii) can be safely, efficiently, and effectively treated in a less intensive level of care than an Inpatient Hospital setting.
● Nutritional counseling for eating disorder diagnosis.

SPD at 45.

24.    The SPD defined "**Accredited Care Facility**" as follows:

6

- For Substance Use Disorder services, a facility licensed, certified, or approved as a treatment facility by the state or jurisdiction in which it operates, operating primarily for treatment of Substance Use Disorder conditions which maintains permanent and full-time facilities for bed care and full-time confinement of at least 15 patients; has a Physician in regular attendance; provides 24 hour per day nursing by a registered nurse; and has a full-time psychiatrist or psychologist on the staff.

- For Psychiatric Treatment, a facility licensed, certified, or approved as a Psychiatric Treatment facility by the state or jurisdiction in which it is located, and which primarily provides psychiatric services for the diagnosis and treatment of mentally ill persons, by or under the supervision of a Physician.

SPD at 95.

## Plaintiffs' Claims and Appeals

25.     Plaintiffs submitted claims for the treatment that J.W. received at Elements.

26.     On information and belief, Blue Cross Blue Shield of Michigan ("BCBSMI") and Anthem Blue Cross and Blue Shield of Wisconsin ("Anthem") were contracted by ABS to process certain claims under the Plan, including Plaintiffs' claims for J.W.'s care at Elements.

27.     Plaintiffs do not presently allege that BCBSMI or Anthem were fiduciaries under the Plan but will seek to amend the complaint if needed.

28.     Through Explanations of Benefits (EOBs) dated March 28, 2023, for dates of service October 12, 2022, through January 3, 2023, BCBSMI, on ABS's behalf, denied the claims for J.W.'s treatment.

29.     The EOBs did not specify any provision of the Plan to explain the denial, instead vaguely referencing "Missing or invalid information," "Diagnosis code," and "Procedure code for services rendered."

**Plaintiffs' First Appeal**

30.     Margaret W. filed an appeal with Smart Health Appeals Committee, which acted on behalf of Defendants, by way of a letter dated September 18, 2023.

31.     In her appeal, Margaret W. explained that her advocate had contacted Anthem to clarify the reason for the denial, and that Anthem had explained that it was for "having an invalid procedure revenue code."

32.     Margaret W. then explained that that the claims for J.W.'s treatment "were billed using the revenue code for intermediate outdoor behavioral health programs, which is 1006.7 However, BCBSMI is plainly incorrect in their assertion that 1006 is an invalid procedural code. Instead, the American Hospital Association (AHA) and the National Uniform Billing Committee (NUBC) approved the request for a new 1006 revenue code specific to the outdoor behavioral health level of care, which has been in effect since July 1, 2017. In case you were unaware, this 1006 revenue code was only approved after an extensive review of these types of programs, their licenses, state regulations, and insurance carrier payments, in addition to the peer-reviewed literature. Therefore, because the 1006 revenue code is indeed a valid code, I ask that you add this valid revenue code to your claims processing systems and reprocess my own claims accordingly.

33.     Margaret W. reminded BCBSMI that ERISA required a review taking into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

8

34.     Margaret W. also stated that, under ERISA, if the response to the appeal was adverse, BCBSMI ABS would be required to set forth in a manner calculated to be understood by the claimant–

(i)     The specific reason or reasons for the adverse determination;

(ii)    Reference to the specific plan provisions on which the determination is based; and

(iii)   A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such information is necessary.

35.     Margaret W. requested copies of any and all documentation related to both the initial determination and the level one appeal determination.

36.     Margaret W. further requested information to assist in an analysis regarding whether ABS and its agents were administering the plan in compliance with the Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"), including:

- any clinical guidelines or medical necessity criteria used in the claim determination, as well as their medical or surgical equivalents, including the plan's mental health, substance use disorder, skilled nursing facility, subacute inpatient rehabilitation, hospice or other intermediate medical/surgical or mental health and substance use disorder criteria, regardless of whether the criteria were used to evaluate this claim.

- reports or opinions provided from any physician or other professional

- the names, qualifications, and healthcare claim denial rates of all individuals who reviewed this claim or who were consulted about the claim.

37.     Margaret W. asked for copies of all documents under which the Plan is operated including all governing plan documents, the summary plan description, any insurance policies in place for the benefits sought as well as any administrative services agreements that exist.

9

38.     Margaret W. further requested any clinical guidelines utilized in the Plan's determination, including the Plan's mental health, substance use disorder, medical/surgical or mental health and substance use disorder criteria.

39.     She further requested copies of any reports or opinions provided by any physician or other professional.

40.     Plaintiffs did not receive any direct acknowledgement from Defendants of their appeal dated September 18, 2023.

41.     On October 27, 2023, ABS, on behalf of the Plan, sent another EOB denying the entirety of J.W.'s treatment at Elements. That EOB indicated that J.W.'s claims were denied under explanation code "BO2        THIS IS NOT A COVERED EXPENSE UNDER THIS PLAN."

42.     This EOB did not cite any specific provision of the Plan to explain this assertion and did not address any of the points raised in Plaintiffs' appeal dated September 18, 2023.

**Plaintiffs' Second Appeal**

43.     Margaret W. filed another appeal with Smart Health Appeals Committee by way of a letter dated December 12, 2023.

44.     Margaret W. reminded Defendants of their statutory duties under ERISA to provide the following during the appeals process: "(1) a full, fair, and thorough review; (2) all comments, documents, records, and other information relating to my claim; (3) the specific reasons for the adverse determination including any specific plan provisions, medical criteria, and other documents utilized in making said determination; (4) the identification and credentials of any medical or vocational expert whose advice was obtained in connection with my claim (even if their advice was not relied upon in making the adverse decision); (5) a description of any additional

10

material or information necessary for me to perfect my claim along with an explanation of why such information is necessary."

45. Defendants did not meet any of those requirements in its EOB that it apparently provided in response to Plaintiffs' September 18, 2023 appeal.

46. Margaret W. also expressed concern that Defendants had shifted their explanation for the denial from an assertedly invalid code to purported lack of coverage under the Plan.

47. She further pointed out that the EOB did not give a clear or specific reason for the denial, including by failing to cite any Plan language in support of the assertion of non-coverage.

48. She further questioned the qualifications of the unidentified reviewer.

49. Margaret W. also identified and explained a few provisions demonstrating that J.W.'s treatment was covered under the Plan. She pointed to provisions in the SPD discussing coverage for care provided by an "Accredited Care Facility" and coverage for care provided by a "Physician."

50. She explained that the care Elements provided to J.W. met those definitions in the Plan, including the fact that Elements was "a 24/7 outdoor behavioral health treatment facility that is duly licensed by the state of Utah to provide these outdoor behavioral health services to children and adolescents, as required by the governing Utah state regulations. In addition, Elements is accredited by a national organization, which further demonstrates their commitment to excellence in healthcare."

51. She concluded that "Based on Element's license, accreditation, governing state regulations, and the terms and provisions of my plan, it is clear that [J.W.'s] claims from Elements meet my plan's requirements for reimbursable mental health care benefits."

52.     Margaret W. further expressed concern that Defendnats were administering the Plan in violation of the MHPAEA by imposing treatment limitations on mental health and substance abuse care that did not apply to medical and surgical care.

53.     Among other things, she pointed out that the Plan was imposing limitations on intermediate treatment for substance abuse and mental health that J.W. received at elements that were not clearly being imposed on intermediate care for medical surgical treatment at intermediate facilities such as skilled nursing services, subacute rehabilitation services, and inpatient hospice services.

54.     She requested that Defendants provide her with information sufficient to conduct a parity analysis including "(1) the specific plan language regarding the above limitation and identify all of the medical/surgical and mental health and substance use disorder benefits to which it applies (or does not apply) in the relevant benefit classification; (2) the factors used in the development of the limitation; (3) the evidentiary standards used to evaluate the factors; (4) the methods and analysis used in the development of the above limitation; and (5) any evidence and documentation to establish that the limitation is applied no more stringently, as written and in operation, to mental health and substance use disorder benefits than to medical and surgical benefits."

55.     In response to this appeal, ABS sent Margaret W. a denial letter dated March 7, 2024.

56.     That denial letter stated in relevant part as follows:

Your appeal received 1/9/24 regarding outdoor/wilderness behavioral health rendered on 10/12/22-12/31/22 and 1/1-1/3/23 by Elements Wilderness Program for the above-mentioned patient has been reviewed. Based on the Plan provisions outlined below, the claim processed correctly. Therefore, the appeal has been denied by

12

the Ascension SmartHealth Appeals Committee and the original determination is upheld.

Records received include a Permanent Child Care License for Elements Wilderness Program which indicates the facility is licensed by the State of Utah as an Outdoor Youth Program. An Outdoor Youth Program is not listed as an accredited care facility for psychiatric services under the Ascension SmartHealth Medical Plan. Section 1.1. of the Plan states in relevant part:

*Accredited Care Facility*

*(b) For Psychiatric Services, a facility licensed, certified, or approved as a Psychiatric Treatment facility by the state or jurisdiction in which it is located, and which primarily provides psychiatric services for the diagnosis and treatment of mentally ill persons, by or under the supervision of a Physician.*

The Ascension SmartHealth Medical Plan Document sets forth the terms and provisions for healthcare benefits and the administration thereof for eligible associates. The Plan covers expenses that are listed as Covered Expenses; expenses listed as Exclusions are not covered.

57. This denial letter did not acknowledge or provide any documents regarding Defendants' compliance with the MHPAEA that Margaret W. had requested.

58. Likewise, the denial letter did not indicate the identity or credentials of the individuals involved with the review, nor did it provide the requested information required under ERISA.

59. This denial letter was limited to a contention that Elements was not an "Accredited Care Facility" under the Plan and gave no other specific rationale for the denial.

60. Defendants deemed Plaintiffs' appeal letter of December 12, 2023, to be a first level appeal of Plaintiffs' claims for J.W.'s treatment, giving instructions on how to file a second level of appeal.

13

**Plaintiffs' Second Level Appeal**

61. By way of a letter signed by Margaret W. and dated April 29, 2024, Plaintiffs appealed the March 7, 2024, appeal denial.

62. Margaret W. observed that ABS's rationale in the denial had not been asserted in the EOB, which had not specified that Elements did not meet the "Accredited Care Facility" definition in the Plan. She alerted Defendants that she viewed this move as an apparent "stacking" of reasons against her.

63. She further correctly pointed out that ABS failed to uphold her "rights under ERISA to provide me with the specific reasons for a denial of claims; to provide my case a full, fair, and thorough review; to describe what additional evidence I could provide in order to perfect my claims; to engage in a meaningful dialogue with me regarding this denial of benefits; and to assign a qualified vocational expert to review my appeal."

64. Margaret W. also made a request that ABS apply the Plan's "Benefit Elevation Program," described at page 11 if the SPD, which stated that:

> The benefit elevation program was created to assist Associates who (i) live in areas where there are no Ascension Network providers/facilities available, or (ii) have other special circumstances that qualify for Benefit Elevation. If an Ascension Network provider is not available where a Participant resides, or if the other special circumstances for Benefit Elevation apply, then payment of Covered Expenses will be made at a higher Tier than would otherwise apply.

65. She explained that she had found that after searching the BCBSMI website, she had found that there were no outdoor youth programs like Elevations in Plaintiffs' network.

66. She further correctly stated that that the treatment J.W. received at Elevations "meets my plan's requirements for reimbursable inpatient, intermediate mental health services."

14

67.     Finally, Margaret W. again requested documents and information to assist in an analysis of whether the Defendants were administering the Plan in compliance with the MHPAEA.

68.     In a letter dated September 18, 2024, Defendants denied Plaintiffs' second level appeal.

69.     That letter stated in relevant part:

The SmartHealth Advisory Committee ("Committee") has received and reviewed your voluntary second level appeal request pursuant to the Ascension SmartHealth Medical Plan "Plan") for coverage for 1006 Outdoor/Wilderness Behavioral Health for [J.W.] ("Claimant."). The Committee has upheld the denial of your first-level appeal. A clinical review of the records received was completed. The reviewer concluded the services not medically necessary and therefore not a covered benefit under the plan based on section 4.7 and 1.51 as follows:

*The criteria requirements for residential behavioral health level of care are not supported in the documentation submitted. There are daily charges for services from DOS 10/12/22-1/2/23, however there are only therapy/group notes for 12 dates of service. The initial assessment from a qualified provider to determine necessity does not meet residential behavioral health criteria but suggests the member was more appropriate for a lower level of care as evidenced by the incomplete documentation submitted. A review of the standard from Wisconsin's State Residential Treatment for Behavior Health Conditions: Regulation and Policy outlining some of the standards for care was performed. The reviewer was unable to place the member into a specific residential category (substance abuse or mental health), as the member does not meet either criterion for residential care, nor do the services documented meet the minimal requirements for services performed.*

Section 4.7 of the Plan states, in relevant part:

The calculation of benefits payable under this Plan shall not include or be based upon any charge made for the following services or supplies, in addition to the terms marked.as "Exclusions" in Section 4.5.

…

15

(l) Services not Medically Necessary to the care and treatment of any injury or illness of the Participant on whose account the charges made, unless such procedure is specifically covered herein, or

(m) Chares for care, treatment services, and supplies which are not uniformly and professionally endorsed by the general medical community as standard medical care.

Section 1.51 of the Plan defines medically necessary as:

(a) is appropriate and essential for the diagnosis or treatment of the Participants' symptoms.
(b) is within the scope, duration or intensity of the level of care which is needed to provide safe, adequate and appropriate diagnosis or treatment
(c) is in accordance with generally accepted current professional medical practice, and
…
All determinations of what constitutes "Medically Necessary" shall be made in accordance with the policies and procedures established by the Plan Administrator and applied by the Claims Administrator. The decision of the Plan Administrator is not intended to influence or alter the treating provider's medical judgment.

Additionally, as stated in the first level appeal determination Elements Wilderness Program is licensed by the State of Utah as an Outdoor Youth Program. An Outdoor Youth Program is not listed as an accredited care facility for psychiatric services under the Ascension SmartHealth Medical Plan.

Section 1.1. of the Plan states in relevant Part:
…
Accredited Care Facility
…
(b) For Psychiatric Services, a facility licensed, certified or approved as a Psychiatric Treatment facility by the state or jurisdiction in which it is located and which primarily provides psychiatric services of for the diagnosis and treatment of mentally ill persons by or under the supervision of a Physician.

As such, this appeal has been denied. The diagnosis code, treatment cord, and their corresponding meanings are available upon request. Such a request for a diagnosis code, treatment code, or their corresponding meaning is not, in and of itself, a request for an internal appeal or an extremal review.

16

The administrative remedies available regarding this claim under the Plan have been exhausted. You have the right to receive, upon request and free charge, reasonable access to and copies of all documents, records, and other information relevant to the claim. Whether a document, record, or other information is relevant to the claim shall be determined in accordance with Labor Regulations Section 2560.503-1(m)(8). If an internal rule, guideline, protocol or other similar criterion was relied upon in making the foregoing determination, such rule guideline, protocol or other similar criteria will be provided free of charge upon request. In addition, if the determination is based on a medical necessity, experimental treatment or similar exclusion or limit, an explanation applying the terms of the Plan to your medial circumstances will be provided free of charge upon request.

70. Defendants' second level denial was wrongful for many reasons, including but not limited to, those discussed below.

71. First, this appeal denial was the first time with Defendants had ever alerted Plaintiffs to any problem that any additional evidence was needed to support a conclusion that the level of care J.W. received at Elements was "medically necessary."

72. Had Plaintiffs been aware that Defendants needed more documentation to support the medical necessity of the treatment, Plaintiffs would have been able to seek to provide it and perfect their claim.

73. Instead, Defendants waited until their denial of Plaintiffs' second level of appeal to make Plaintiffs aware of purported documentation defects.

74. Moreover, Defendants did not provide Plaintiffs with information sufficient to understand or challenge the conclusion that a lower level of care would have been more appropriate for J.W. Instead, that conclusion about the level of care appeared to be based entirely on a broad, vague claim of "incomplete documentation submitted," not any clinical judgment by any professional of any particular facts relating to J.W.'s symptoms and care needs.

75. Likewise, Defendants made a generalized reference to J.W.'s treatment not meeting criteria set out in Wisconsin's State Residential Treatment for Behavior Health Conditions: Regulation and Policy. They failed, however, to specify which criteria they analyzed and what specific information about J.W.'s conditions, needs, and treatment they used for that analysis. They further failed to identify what information Plaintiffs could have supplied to assist that determination.

76. Additionally, Defendants did not provide any information about the identity and qualifications of the reviewer making the determination about appropriate levels of care.

77. This course of action in adding a new, inadequately explained and supported rationale was not appropriate under ERISA and was wrong on the substance. The care, including the level of care, J.W. received at Elements was medically necessary and Plaintiffs had provided, or could have obtained and provided, documentation to support that conclusion.

78. Moreover, Defendants did not provide any explanation in response to Plaintiffs' observation that Elements' licensure in Utah meant that Elements met the Plan's definition of "Accredited Care Facility."

79. For example, Defendants did not acknowledge that the Utah license Elements maintained could be considered the equivalent of a "Psychiatric Treatment facility."

80. Defendants also failed to consider any other basis for coverage of the treatment except those mentioned with particularity by Plaintiffs in their appeals.

81. That course of action placed Plaintiffs at a disadvantage, which was not appropriate under ERISA's standards because ERISA required Defendants to meaningfully engage with Plaintiffs and conduct a full and fair review of their claims.

18

82.     For example, in addition to the specific bases for coverage Plaintiffs identified in their appeals of Defendants' vague and broad denial, there were other bases for coverage.

83.     One such basis is that J.W.'s treatment at Elements meet the definition "Residential treatment care in a Residential Treatment Center only when the Participant's condition (i) makes treatment beyond Outpatient services Medically Necessary and (ii) can be safely, efficiently, and effectively treated in a less intensive level of care than an Inpatient Hospital setting." SPD at 45.

84.     Another issue with the second level denial is that it wholly ignored Plaintiffs' concerns and requests for information to assist a parity analysis under the MHPAEA.

85.     A final issue is that Plaintiffs had already requested all relevant documentation that Defendants were using to support their denial, and Defendants provided none of it.

86.     For these and other reasons, Defendants' second level denial was wrong under the terms of the Plan, reflected a failure to comply with ERISA, and evidenced that they administered the Plan in a way that violated the MHPAEA.

87.     After receiving this second level denial, litigation was Plaintiffs' only option to enforce their right to benefits owing under the Plan and seek reimbursement of expenses under the terms of the Plan (as written or as reformed or required by MHPAEA), and/or under the MHPAEA amendments to ERISA.

88.     Plaintiffs thereafter retained the undersigned to pursue their rights and remedies under ERISA.

89.     The remedies Plaintiffs seek herein are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008, pre-judgment

interest, recoverable fees under 29 U.S.C. § 1132(g), and an award of costs and expenses under 29 U.S.C. § 1132(g) and other applicable law.

90. Plaintiffs do not seek double recovery.

**FIRST CAUSE OF ACTION**
**(Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))**

91. All allegations of this Complaint are incorporated here as though fully set forth herein.

92. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Defendants to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

93. Defendants wrongly excluded coverage for J.W.'s treatment in violation of the terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

94. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Plaintiffs in the pre-litigation appeal process.

95. The denial letters demonstrate the absence of a meaningful analysis of Plaintiffs' appeal. Among other things, Defendants did not engage with or respond to the issues presented in the appeal, did not meaningfully address the arguments or concerns raised during the appeal process, and did not provide Plaintiffs with information about how they could perfect their claim.

96. Defendants breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in J.W.'s interest

20

and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of J.W.'s claims.

97.     Defendants' actions in denying payment for J.W.'s treatment are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

**SECOND CAUSE OF ACTION**
**(Violation of the Mental Health Parity and Addition Equity Act (29 U.S.C. § 1132(a)(3))**

98.     All allegations of this Complaint are incorporated here as though fully set forth herein.

99.     The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of Defendants' fiduciary duties.

100.     Generally speaking, the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

101.     The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

102.     Impermissible nonquantitative treatment limitations (NQTLs) under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider

specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

103.    Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for J.W.'s treatment include subacute inpatient treatment settings such as skilled nursing facilities, inpatient rehabilitation facilities, etc.

104.    The Plan does not exclude coverage for medically necessary care of medical/surgical conditions based on geographic location, facility type, provider specialty, or other criteria in the manner Defendants excluded coverage of treatment for J.W. at Elements.

105.    Upon information and belief, Defendants have not applied a similar exclusion in the context of skilled nursing facilities or other analogs to Elements. Alternatively and in addition, if Defendants have never received a similar claim in a setting other than mental health treatment, then Defendants are aware that it is enforcing an exclusion that is only applicable to mental health conditions/benefits.

106.    Upon information and belief, Defendants' denial of coverage also violated the MHPAEA in application or effect. Because Defendants declined to produce the requested documents and materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims.

107.    Defendants violated 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

108.     Plaintiffs expressed serious concerns that Defendnats were violating the statute and asked for a response using specific and direct examples. Defendants failed or declined to do this and failed or declined to even address the MHPAEA in their denial letters or EOBs.

109.     The violations of MHPAEA by Defendants are breaches of fiduciary duty.

WHEREFORE, Plaintiffs seek relief as follows:

1.     Judgment in the total amount that is owed for J.W.'s treatment at Elements;

2.     Pre- and post-judgment interest to the date of payment;

3.     Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) including, but not limited to:

(a)     A declaration that the action of Defendants violated the MHPAEA;

(b)     An injunction ordering Defendants to cease violating the MHPAEA and requiring compliance with the statute;

(c)     An Order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

(d)     An Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of the MHPAEA;

(e)     An Order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of the MHPAEA;

(f)     An Order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss;

(g)     An Order equitably estopping Defendants from denying Plaintiffs' claims in violation of the MHPAEA; and

(h)     An Order providing restitution from Defendants to Plaintiffs for their loss arising out of Defendants' violations of the MHPAEA and unjust enrichment.

4.     Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

5.     For such further relief as the Court deems just and proper.

DATED this 17th day of September, 2025.

Respectfully submitted,

*/s/ Karra J. Porter*
Karra J. Porter
Utah Bar No. 5223
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
T: (801) 323-5000
F: (801) 355-3472
E: karra.porter@chrisjen.com
*Attorney for Plaintiffs*